1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRANDON ALEXANDER                    No.  2:11-cv-01125 MCE JFM
     FERNANDEZ,
12
                    Plaintiff,
13
            v.
14                                        FINDINGS & RECOMMENDATIONS
     CALIFORNIA DEPARTMENT OF
15   CORRECTION & REHABILITATION, et
     al.,
16
                    Defendants.
17

18         Defendants Barnes and Cate's motion to dismiss (ECF No. 37) came on regularly for

19   hearing on July 25, 2013.[1]  ECF No. 44.  Carter White appeared for plaintiff.  Lawrence Bragg

20   appeared for defendants.  After considering the supporting documentation and oral arguments,

21   and for the reasons discussed at the hearing, IT IS HEREBY RECOMMENDED that defendants

22   Barnes and Cate's motion to dismiss be granted.

23   BACKGROUND

24         Plaintiff filed his original complaint on April 27, 2011, against the California Department

25   of Corrections and Rehabilitation ("CDCR"); Matthew Cate, former Director of the CDCR; and

26   _____
     [1]  In his opposition, plaintiff correctly points out, and defendants concede, that defendants'
     motion to dismiss is untimely because defendants answered plaintiff's complaint on May 1, 2013.
27   ECF No. 40 at 1 and ECF No. 41 at 2.  As a result, defendants' motion to dismiss will be treated
     as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  See Fed. R. Civ. P.
28   12(h)(2)(B); see also Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980).

                                                1

1   R.E. Barnes, former Warden of California Correctional Center in Susanville, California ("CCC-

2   Susanville"). ECF No. 1. Plaintiff alleges that on June 7, 2009, he was playing basketball at

3   CCC-Susanville, and injured his left "ring" finger. Id. at 4. Plaintiff alleges that he was not

4   medically examined for approximately one month, despite repeated requests for an examination.

5   Id. at 5. When an x-ray was taken of plaintiff's finger, it revealed that his finger suffered a fresh

6   break, but that the broken finger had already begun healing incorrectly due to the delay in

7   treatment. Id. Surgery was not recommended because it could potentially damage plaintiff's

8   finger. Id. at 5-6. Plaintiff also alleges that he did not receive pain medication for his broken

9   finger until one year after the injury. Id. at 6. On June 27, 2011, the court dismissed plaintiff's

10  complaint as insufficient to state an Eighth Amendment claim for deliberate indifference to his

11  medical needs. ECF No. 5. Plaintiff was granted leave to file an amended complaint. Id.

12       On July 13, 2011, plaintiff filed his first amended complaint naming Matthew Cate, R.E.

13  Barnes and Andrew Pomozal, CCC-Suanville's Chief Medical Officer, as defendants. ECF No.

14  8. On January 3, 2012, the court found service appropriate for all three defendants. ECF No. 9.

15       On April 9, 2012, defendants Cate, Barnes and Pomozal filed a motion to dismiss. ECF

16  No. 16. On January 24, 2013, the court entered findings and recommendations recommending

17  dismissing plaintiff's first amended complaint to the extent it purports to state claims against

18  defendants Barnes or Cate.[2] ECF No. 26 at 4-5. The court also recommended dismissal of

19  plaintiff's request for monetary damages against any of the named defendants in their official

20  capacities. Id. at 5. On February 27, 2013, plaintiff, through counsel, filed objections to the

21  court's findings and recommendations, specifically objecting to the court's recommendation

22  granting defendants Barnes and Cate's motion to dismiss.[3] ECF No. 31. On March 28, 2013, the

23  

24  [2] On January 28, 2013, the court appointed Carter White for the limited purpose of prospective
    counsel meeting with plaintiff and conducting an initial interview. ECF No. 27. On February 11,
25  2013, Carter White formally appeared as plaintiff's counsel in this action. ECF No. 29.

26  [3] Plaintiff set forth two arguments in support of his objection: (1) "under the liberal pleadings
    standard applicable to pro se civil rights litigants, [the court] did not apply the proper broad
27  construction of Plaintiff's complaint;" and (2) "applying this broad construction and the proper
    legal test, Plaintiff has pled sufficient facts to support cognizable supervisory liability claims
28  against defendants Barnes and Cate." ECF No. 31 at 1-2. In the alternative, plaintiff sought leave
    to amend his first amended complaint. Id. at 11.

1    district judge adopted the findings and recommendations in full, except that plaintiff was granted

2    final leave to amend his allegations against defendants Barnes and Cate.  ECF No. 33.

3           On April 17, 2013, plaintiff, through counsel, filed his second amended complaint.[4]  ECF

4    No. 34.  Plaintiff's operative second amended complaint sets forth how he sustained the injury to

5    his left "ring" finger on June 7, 2009, and alleges that he attempted to seek medical attention but

6    was told to "come back tomorrow."  Id. at 3.  Plaintiff alleges that when he returned to the

7    medical window on June 8, 2009, he was told that he needed to fill out a medical request form,

8    and was then made to wait until the end of the day, without assistance, when he was told to leave

9    and wait for a "Medical Ducat."  Id.  Plaintiff alleges he returned after eleven days and was told

10   his medical request form was lost and that he would have to fill out another form.  Id.  Plaintiff

11   alleges that at the time he filled out the form, "on or about June 19, 2009, procedures at CCC for

12   processing Health Care Services Request Forms were in serious disarray."  Id.  In support of this

13   allegation, plaintiff alleges that Part II of the request form, which is to be filled out by a triage

14   nurse, was "routinely not completed, or only partially completed, resulting in deliberate

15   indifference to the serious medical needs of inmates."  Id.  Plaintiff alleges that "[t]hese

16   Constitutional violations were the direct result of the failure of [d]efendants Pomozal, Barnes, and

17   Cate to implement adequate procedures for the processing of Health Care Service Request

18   Forms."  Id.  Plaintiff alleges that none of the pertinent information in Part II was filled out, such

19   as the date and time the form was received.  Id. at 3-4.  Plaintiff further alleges that Part II was

20   incorrectly marked as "routine," "in deliberate disregard of the information provided by Plaintiff

21   in Part I of the form that he was in severe pain and likely had suffered a broken finger."  Id. at 4.

22   Plaintiff alleges that, as a result of Part II of the form being marked as routine, he was not seen for

23

---

24   [4] The court notes that plaintiff identifies Doe Defendants 1-25 in his second amended complaint.
     ECF No. 34.  The use of Doe Defendants is not favored in the Ninth Circuit.  See Gillespie v.
25   Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  However, where the identity of alleged defendants
     cannot be known prior to the filing of a complaint the plaintiff should be given an opportunity
26   through discovery to identify them.  Id.  Failure to afford the plaintiff such an opportunity is error.
     See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).  Accordingly, the court
27   recommends dismissing the claims against Doe Defendants 1-25 without prejudice.  Should
     plaintiff learn the identities of Doe Defendants 1-25 through discovery, he may move to file an
28   amended complaint to add them as named defendants.  See Brass v. County of Los Angeles, 328
     F.3d 1192, 1195-98 (9th Cir. 2003).

1    medical treatment for another two weeks.  <u>Id.</u>  Plaintiff's finger was x-rayed on July 15, 2009,

2    which showed a fresh break in the finger that had already partially healed.  <u>Id.</u>  As a result,

3    plaintiff alleges he was told there was nothing the doctor could do to help it heal properly.  <u>Id.</u>

4    Sometime between August 27, 2009, and October 27, 2009, plaintiff alleges he received pain

5    medication for the first time.  <u>Id.</u> at 5.  On October 27, 2009, plaintiff alleges he saw a doctor and

6    was told his finger could not be operated on because of how it healed, and that it would be

7    permanently disfigured.  <u>Id.</u>

8           Regarding defendant Cate, plaintiff alleges as follows:

9           Defendant Cate, as Director of CDCR, was responsible for the
            operations of CDCR and for the welfare of all inmates.
10
            Defendant Cate had direct knowledge that prisons were
11          overcrowded and that this overcrowding led to inmates not being
            seen by medical staff in a timely manner and that inmates suffered
12          injuries as a result of this delay in treatment.  Defendant Cate knew
            that the CDCR medical system was not providing adequate medical
13          care and that this was depriving inmates of their Eighth
            Amendment right against cruel and unusual punishment yet he did
14          nothing to fix the system.

15   <u>Id.</u> at 6.  With regard to defendant Barnes, plaintiff alleges as follows:

16          Defendant Barnes, as Warden of CCC, was responsible for the
            operations of CCC and for the welfare of the inmates in CCC.
17
            Defendant Barnes, by not overseeing a competent medical staff or
18          implementing a medical scheduling system that guaranteed inmates
            receive medical care in a timely manner, failed to provide a facility
19          that could provide adequate medical care to its inmates and set into
            motion a series of acts that he knew or reasonably should have
20          known would result in the deprivation of Plaintiff's Eighth
            Amendment rights.
21   <u>Id.</u>

22   <u>LEGAL STANDARD FOR SUPERVISOR LIABILITY UNDER SECTION 1983</u>

23          Generally, "[g]overnment officials may not be held liable for the unconstitutional conduct

24   of their subordinates under a theory of respondeat superior."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937,

25   1948 (2009).  Rather, each government official, regardless of his or her title, is only liable for his

26   or her own misconduct, and therefore, plaintiff must demonstrate that each defendant, through his

27   or her own individual actions, violated plaintiff's constitutional rights.  <u>Id.</u> at 1948-49.

28   ////

                                              4

1    When examining the issue of supervisor liability, it is clear that the supervisors are not

2    subject to vicarious liability, but are liable only for their own conduct.  Jeffers v. Gomez, 267

3    F.3d 895, 915 (9th Cir. 2001); Wesley v. Davis, 333 F. Supp. 2d 888, 892 (C.D. Cal. 2004).  In

4    order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1)

5    personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

6    between the supervisor's wrongful conduct and the constitutional violation.  Jeffers, 267 F.3d at

7    915; Wesley, 333 F. Supp. 2d at 892.  The sufficient causal connection may be shown by

8    evidence that the supervisor implemented a policy so deficient that the policy itself is a

9    repudiation of constitutional rights.  Wesley, 333 F. Supp. 2d at 892 (internal quotations omitted).

10   However, **an individual's general responsibility for supervising the operations of a prison is**

11   **insufficient to establish personal involvement**.  Id. (emphasis added, internal quotations

12   omitted).

13    Supervisor liability under Section 1983 is a form of direct liability.  Munoz v. Kolender,

14   208 F. Supp. 2d 1125, 1149 (S.D. Cal. 2002).  Under direct liability, plaintiff must show that each

15   defendant breached a duty to him which was the proximate cause of his injury.  Id.  "'The

16   requisite causal connection can be established . . . by setting in motion a series of acts by others

17   which the actor knows or reasonably should know would cause others to inflict the constitutional

18   injury.'"  Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).  However "where

19   the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for

20   supervisory liability based upon the supervisor's knowledge of and acquiescence in

21   unconstitutional conduct by others."  Starr v. Baca, 633 F.3d 1191, 1196 (9th Cir. 2011).

22   DISCUSSION

23    Defendants Barnes and Cate (collectively "defendants") move this court to dismiss

24   plaintiff's claims on the grounds that plaintiff's second amended complaint, "like his previous

25   complaints, fails to state a cognizable Eighth Amendment claim against" them because it does not

26   allege that defendants Barnes or Cate "personally processed his inmate health care request forms,

27   or knew that the processing of these forms had been delayed."  ECF No. 37-1 at 2.  With regard to

28   defendant Barnes, defendants argue that plaintiff is attempting to allege supervisor liability but

5

1  fails to allege that defendant Barnes supervised the employees who allegedly improperly

2  processed plaintiff's medical request forms.  Id. at 6.  Defendants further argue that plaintiff fails

3  to allege that defendant Barnes "was in charge of medical care or the scheduling of inmate health

4  care request forms at CCC."  Id. at 2.  With regard to defendant Cate, defendants argue that

5  plaintiff failed to allege he personally processed plaintiff's medical request forms.  Id. at 6.

6  Defendants also argue that plaintiff failed to allege a connection between defendant Cate's

7  alleged failure to "fix" the CDCR medical system and plaintiff's claim that he received

8  inadequate medical care for his injured finger.  Id. at 7.

9          In his opposition, plaintiff argues that his second amended complaint "makes very specific

10  allegations regarding [defendants'] failure as supervisors . . . to implement adequate procedures

11  for processing" health care request forms.  ECF No. 40 at 3.  Plaintiff argues that defendant

12  Barnes "is in charge of the institution and has overall responsibility for implementation of

13  policies and procedures at the institution," and defendant Cate "has overall responsibility over all

14  institutions within CDCR."  Id.  According to plaintiff, defendants' failure to "train, supervise,

15  and control their subordinates in implementing the procedure for properly completing" medical

16  request forms, "and [their] acquiescence in the resulting deprivations in medical care, was the

17  specific reason for the violation of Plaintiff's constitutional rights."  Id.

18          For the reasons discussed below, the court finds that plaintiff has failed to point to either

19  defendants' personal involvement in the alleged constitutional deprivation, or to a sufficient

20  causal connection between defendants' conduct and the alleged constitutional violation.  Jeffers,

21  267 F.3d at 915.

22          The court finds that the allegations in plaintiff's second amended complaint do not cure

23  the deficiencies identified in the court's order dismissing plaintiff's first amended complaint.

24  Compare ECF No. 8 at 8-9 with ECF No. 34 at 6-7.  As defendants correctly point out, plaintiff

25  again failed to allege their personal involvement in his constitutional violation.  ECF No. 26 at 4-

26  5.  "He does not allege, for example, that either Barnes or Cate was personally aware of the loss

27  of plaintiff's first medical request form or the delay in treatment of plaintiff's broken finger.

28  Furthermore, there is nothing in the [second amended complaint] that connects plaintiff's general

6

1  claim that defendants Barnes and Cate oversee poor medical care in California's overcrowded

2  prisons with his specific claim that his Eighth Amendment rights were violated because he

3  received a delay in treatment." Id. at 5.  During the hearing on defendants' motion to dismiss,

4  plaintiff's counsel made it clear that he wanted to challenge the provision of medical services to

5  all inmates, referencing the recent Ninth Circuit opinion in Pride v. Correa in support of his

6  argument.  See Pride v. Correa, No. 10-56036, 2013 WL 3742531, at *5 (9th Cir. July 16, 2013)

7  ("Individual claims for injunctive relief related to medical treatment are discrete from the claims

8  for systemic reform addressed in Plata.").  However, plaintiff's counsel failed to identify any

9  connection between defendants and the individual medical care plaintiff received, despite being

10  given an opportunity to do so both in his opposition and during the hearing.[5]  See, e.g., Pride v.

11  Correa, No. 10-56036, 2013 WL 3648587, at *2 (9th Cir. July 16, 2013) (concurrent

12  memorandum disposition finding summary judgment in favor of defendant warden proper

13  because defendant "was neither personally involved with the alleged constitutional violation nor

14  was his policy sufficiently causally connected to the violation") (citing Redman v. County of San

15  Diego, 942 F.2d 1435, 1454-55 (9th Cir. 1991)).

16      With regard to personal involvement, as noted above, an individual's general

17  responsibility for supervising the operations of a prison is insufficient to establish personal

18  involvement.  Wesley, 333 F.Supp.2d at 892.  Here, plaintiff alleges that defendant Cate knew

19  prisons were overcrowded and providing inadequate medical care, and "did nothing to fix the

20  system."  ECF No. 34 at 6.  These allegations fail to go beyond defendant Cate's general

21

22  [5] In his second amended complaint and during the hearing on defendants' motion to dismiss,
    plaintiff attempted to point to an October 2009 audit of California Correctional Center's medical
23  care system in an effort to demonstrate defendants knew of "deficiencies in how the facility
    handled inmate medical requests."  ECF No. 34 at 6.  However, this report was not attached to the
24  second amended complaint, nor to plaintiff's opposition to defendants' motion to dismiss.
    Nevertheless, plaintiff has not asserted that the report identifies, for example, a policy that
25  medical forms were filled out incorrectly or lost which would indicate a causal connection
    between defendants' actions or inactions and plaintiff's injury.  See, e.g., Starr v. Baca, 652 F.3d
26  1202, 1216-17 (9th Cir. 2011) (finding plaintiff sufficiently alleged a claim of deliberate
    indifference because, in addition to alleging defendant was given notice of "several reports[] of
27  systematic problems in the county jails under his supervision," plaintiff specifically alleged
    "numerous incidents in which inmates in Los Angeles County jails have been killed or injured
28  because of the culpable actions of the subordinates of" defendant, and that defendant "was given
    notice of all of these incidents").

1   responsibility for supervising the CDCR and specify how he was directly involved in plaintiff's

2   alleged untimely medical treatment.  Plaintiff alleges defendant Barnes "failed to provide a

3   facility that could provide adequate medical care . . . [which] set into motion a series of acts" that

4   led to a deprivation of plaintiff's Eight Amendment rights.  However, plaintiff does not allege

5   defendant Barnes knew of a violation of plaintiff's Eighth Amendment rights and failed to act to

6   prevent them, or that he personally reviewed any of plaintiff's medical request forms, or that he

7   was aware of the condition of plaintiff's finger.  Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir.

8   2012) (holding that a prison warden and associate warden could be held liable for deliberate

9   indifference to a prisoner's medical needs, "[b]ecause they were aware [the prisoner] needed

10  surgery and failed to act to prevent further harm").  Thus, plaintiff failed to establish defendants'

11  personal involvement in the alleged constitutional violation.

12          With regard to a sufficient causal connection, "[t]he requisite causal connection can be

13  established . . . by setting in motion a series of acts by others which the actor knows or reasonably

14  should know would cause others to inflict the constitutional injury."  Johnson, 588 F.2d at 743-

15  44.  "A supervisor may be liable if the supervisor knew of the violations and failed to act to

16  prevent them."  Snow, 681 F.3d at 989 (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.

17  1989)).  Here, the allegations that defendant Cate knew prisons were overcrowded, and failed to

18  "fix the system" are too general to establish that he knew or reasonably should have known this

19  would cause others to inflict the constitutional injury plaintiff allegedly suffered.  Johnson, 588

20  F.2d at 743-44.  In other words, the fact that defendant Cate knew that California prisons, in

21  general, were overcrowded does not establish a sufficient causal connection to plaintiff's alleged

22  constitutional violation due to improper medical treatment while housed in CCC-Susanville.

23          Plaintiff's allegations regarding defendant Barnes' are also insufficient.  Plaintiff alleges

24  defendant Barnes "failed to provide a facility that could provide adequate medical care to its

25  inmates and set into motion a series of actions that he knew or reasonably should have known

26  would result in the deprivation of Plaintiff's Eighth Amendment rights."  Id. at 7.  However, these

27  allegations fail to specify the "series of acts" defendant Barnes "set into motion" that, for

28  example, led to a policy of improperly processing medical request forms.  The allegations merely

1   amount to defendant Barnes' general responsibility of supervising the operations of CCC-

2   Susanville.  Thus, plaintiff's allegations fail to establish a sufficient causal connection between

3   defendants' conduct and the alleged violation of his constitutional rights.

4   <u>CONCLUSION</u>

5           Accordingly, IT IS HEREBY RECOMMENDED that:

6           1.   Defendants Barnes and Cate's motion to dismiss (ECF No. 37) be granted;

7           2.   Defendants Barnes and Cate be dismissed from this action with prejudice; and

8           3.   Defendants Does 1-25 be dismissed from this action without prejudice.

9           These findings and recommendations are submitted to the United States District Judge

10   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11   after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

14   objections shall be filed and served within fourteen days after service of the objections.  The

15   parties are advised that failure to file objections within the specified time may waive the right to

16   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

17   Dated:  July 31, 2013

18                                                    _____
                                                     KENDALL J. NEWMAN
19                                                   UNITED STATES MAGISTRATE JUDGE
20

21

22   fern1125.mtd

23

24

25

26

27

28