UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON ALEXANDER FERNANDEZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTION & REHABILITATION, et al.,<br><br>　　　　Defendants. | No. 2:11-cv-01125 MCE JFM<br><br><br>FINDINGS & RECOMMENDATIONS |

Defendants Barnes and Cate's motion to dismiss (ECF No. 37) came on regularly for hearing on July 25, 2013.[1] ECF No. 44. Carter White appeared for plaintiff. Lawrence Bragg appeared for defendants. After considering the supporting documentation and oral arguments, and for the reasons discussed at the hearing, IT IS HEREBY RECOMMENDED that defendants Barnes and Cate's motion to dismiss be granted.

BACKGROUND

Plaintiff filed his original complaint on April 27, 2011, against the California Department of Corrections and Rehabilitation ("CDCR"); Matthew Cate, former Director of the CDCR; and

---

[1] In his opposition, plaintiff correctly points out, and defendants concede, that defendants' motion to dismiss is untimely because defendants answered plaintiff's complaint on May 1, 2013. ECF No. 40 at 1 and ECF No. 41 at 2. As a result, defendants' motion to dismiss will be treated as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See Fed. R. Civ. P. 12(h)(2)(B); see also Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980).

1

R.E. Barnes, former Warden of California Correctional Center in Susanville, California ("CCC-Susanville"). ECF No. 1. Plaintiff alleges that on June 7, 2009, he was playing basketball at CCC-Susanville, and injured his left "ring" finger. Id. at 4. Plaintiff alleges that he was not medically examined for approximately one month, despite repeated requests for an examination. Id. at 5. When an x-ray was taken of plaintiff's finger, it revealed that his finger suffered a fresh break, but that the broken finger had already begun healing incorrectly due to the delay in treatment. Id. Surgery was not recommended because it could potentially damage plaintiff's finger. Id. at 5-6. Plaintiff also alleges that he did not receive pain medication for his broken finger until one year after the injury. Id. at 6. On June 27, 2011, the court dismissed plaintiff's complaint as insufficient to state an Eighth Amendment claim for deliberate indifference to his medical needs. ECF No. 5. Plaintiff was granted leave to file an amended complaint. Id.

On July 13, 2011, plaintiff filed his first amended complaint naming Matthew Cate, R.E. Barnes and Andrew Pomozal, CCC-Suanville's Chief Medical Officer, as defendants. ECF No. 8. On January 3, 2012, the court found service appropriate for all three defendants. ECF No. 9.

On April 9, 2012, defendants Cate, Barnes and Pomozal filed a motion to dismiss. ECF No. 16. On January 24, 2013, the court entered findings and recommendations recommending dismissing plaintiff's first amended complaint to the extent it purports to state claims against defendants Barnes or Cate.[2] ECF No. 26 at 4-5. The court also recommended dismissal of plaintiff's request for monetary damages against any of the named defendants in their official capacities. Id. at 5. On February 27, 2013, plaintiff, through counsel, filed objections to the court's findings and recommendations, specifically objecting to the court's recommendation granting defendants Barnes and Cate's motion to dismiss.[3] ECF No. 31. On March 28, 2013, the

---

[2] On January 28, 2013, the court appointed Carter White for the limited purpose of prospective counsel meeting with plaintiff and conducting an initial interview. ECF No. 27. On February 11, 2013, Carter White formally appeared as plaintiff's counsel in this action. ECF No. 29.

[3] Plaintiff set forth two arguments in support of his objection: (1) "under the liberal pleadings standard applicable to pro se civil rights litigants, [the court] did not apply the proper broad construction of Plaintiff's complaint;" and (2) "applying this broad construction and the proper legal test, Plaintiff has pled sufficient facts to support cognizable supervisory liability claims against defendants Barnes and Cate." ECF No. 31 at 1-2. In the alternative, plaintiff sought leave to amend his first amended complaint. Id. at 11.

1    district judge adopted the findings and recommendations in full, except that plaintiff was granted

2    final leave to amend his allegations against defendants Barnes and Cate.  ECF No. 33.

3         On April 17, 2013, plaintiff, through counsel, filed his second amended complaint.[4]  ECF

4    No. 34.  Plaintiff's operative second amended complaint sets forth how he sustained the injury to

5    his left "ring" finger on June 7, 2009, and alleges that he attempted to seek medical attention but

6    was told to "come back tomorrow."  Id. at 3.  Plaintiff alleges that when he returned to the

7    medical window on June 8, 2009, he was told that he needed to fill out a medical request form,

8    and was then made to wait until the end of the day, without assistance, when he was told to leave

9    and wait for a "Medical Ducat."  Id.  Plaintiff alleges he returned after eleven days and was told

10   his medical request form was lost and that he would have to fill out another form.  Id.  Plaintiff

11   alleges that at the time he filled out the form, "on or about June 19, 2009, procedures at CCC for

12   processing Health Care Services Request Forms were in serious disarray."  Id.  In support of this

13   allegation, plaintiff alleges that Part II of the request form, which is to be filled out by a triage

14   nurse, was "routinely not completed, or only partially completed, resulting in deliberate

15   indifference to the serious medical needs of inmates."  Id.  Plaintiff alleges that "[t]hese

16   Constitutional violations were the direct result of the failure of [d]efendants Pomozal, Barnes, and

17   Cate to implement adequate procedures for the processing of Health Care Service Request

18   Forms."  Id.  Plaintiff alleges that none of the pertinent information in Part II was filled out, such

19   as the date and time the form was received.  Id. at 3-4.  Plaintiff further alleges that Part II was

20   incorrectly marked as "routine," "in deliberate disregard of the information provided by Plaintiff

21   in Part I of the form that he was in severe pain and likely had suffered a broken finger."  Id. at 4.

22   Plaintiff alleges that, as a result of Part II of the form being marked as routine, he was not seen for

---

[4] The court notes that plaintiff identifies Doe Defendants 1-25 in his second amended complaint. ECF No. 34.  The use of Doe Defendants is not favored in the Ninth Circuit.  See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  However, where the identity of alleged defendants cannot be known prior to the filing of a complaint the plaintiff should be given an opportunity through discovery to identify them.  Id.  Failure to afford the plaintiff such an opportunity is error. See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).  Accordingly, the court recommends dismissing the claims against Doe Defendants 1-25 without prejudice.  Should plaintiff learn the identities of Doe Defendants 1-25 through discovery, he may move to file an amended complaint to add them as named defendants.  See Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

medical treatment for another two weeks.  Id.  Plaintiff's finger was x-rayed on July 15, 2009, which showed a fresh break in the finger that had already partially healed.  Id.  As a result, plaintiff alleges he was told there was nothing the doctor could do to help it heal properly.  Id.  Sometime between August 27, 2009, and October 27, 2009, plaintiff alleges he received pain medication for the first time.  Id. at 5.  On October 27, 2009, plaintiff alleges he saw a doctor and was told his finger could not be operated on because of how it healed, and that it would be permanently disfigured.  Id.

> Regarding defendant Cate, plaintiff alleges as follows:
>
>> Defendant Cate, as Director of CDCR, was responsible for the operations of CDCR and for the welfare of all inmates.
>>
>> Defendant Cate had direct knowledge that prisons were overcrowded and that this overcrowding led to inmates not being seen by medical staff in a timely manner and that inmates suffered injuries as a result of this delay in treatment.  Defendant Cate knew that the CDCR medical system was not providing adequate medical care and that this was depriving inmates of their Eighth Amendment right against cruel and unusual punishment yet he did nothing to fix the system.

Id. at 6.  With regard to defendant Barnes, plaintiff alleges as follows:

>> Defendant Barnes, as Warden of CCC, was responsible for the operations of CCC and for the welfare of the inmates in CCC.
>>
>> Defendant Barnes, by not overseeing a competent medical staff or implementing a medical scheduling system that guaranteed inmates receive medical care in a timely manner, failed to provide a facility that could provide adequate medical care to its inmates and set into motion a series of acts that he knew or reasonably should have known would result in the deprivation of Plaintiff's Eighth Amendment rights.

Id.

LEGAL STANDARD FOR SUPERVISOR LIABILITY UNDER SECTION 1983

Generally, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).  Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, plaintiff must demonstrate that each defendant, through his or her own individual actions, violated plaintiff's constitutional rights.  Id. at 1948-49.

////

When examining the issue of supervisor liability, it is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001); Wesley v. Davis, 333 F. Supp. 2d 888, 892 (C.D. Cal. 2004). In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Jeffers, 267 F.3d at 915; Wesley, 333 F. Supp. 2d at 892. The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights. Wesley, 333 F. Supp. 2d at 892 (internal quotations omitted). However, **an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement**. Id. (emphasis added, internal quotations omitted).

Supervisor liability under Section 1983 is a form of direct liability. Munoz v. Kolender, 208 F. Supp. 2d 1125, 1149 (S.D. Cal. 2002). Under direct liability, plaintiff must show that each defendant breached a duty to him which was the proximate cause of his injury. Id. "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)). However "where the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others." Starr v. Baca, 633 F.3d 1191, 1196 (9th Cir. 2011).

DISCUSSION

Defendants Barnes and Cate (collectively "defendants") move this court to dismiss plaintiff's claims on the grounds that plaintiff's second amended complaint, "like his previous complaints, fails to state a cognizable Eighth Amendment claim against" them because it does not allege that defendants Barnes or Cate "personally processed his inmate health care request forms, or knew that the processing of these forms had been delayed." ECF No. 37-1 at 2. With regard to defendant Barnes, defendants argue that plaintiff is attempting to allege supervisor liability but

fails to allege that defendant Barnes supervised the employees who allegedly improperly processed plaintiff's medical request forms. Id. at 6. Defendants further argue that plaintiff fails to allege that defendant Barnes "was in charge of medical care or the scheduling of inmate health care request forms at CCC." Id. at 2. With regard to defendant Cate, defendants argue that plaintiff failed to allege he personally processed plaintiff's medical request forms. Id. at 6. Defendants also argue that plaintiff failed to allege a connection between defendant Cate's alleged failure to "fix" the CDCR medical system and plaintiff's claim that he received inadequate medical care for his injured finger. Id. at 7.

In his opposition, plaintiff argues that his second amended complaint "makes very specific allegations regarding [defendants'] failure as supervisors . . . to implement adequate procedures for processing" health care request forms. ECF No. 40 at 3. Plaintiff argues that defendant Barnes "is in charge of the institution and has overall responsibility for implementation of policies and procedures at the institution," and defendant Cate "has overall responsibility over all institutions within CDCR." Id. According to plaintiff, defendants' failure to "train, supervise, and control their subordinates in implementing the procedure for properly completing" medical request forms, "and [their] acquiescence in the resulting deprivations in medical care, was the specific reason for the violation of Plaintiff's constitutional rights." Id.

For the reasons discussed below, the court finds that plaintiff has failed to point to either defendants' personal involvement in the alleged constitutional deprivation, or to a sufficient causal connection between defendants' conduct and the alleged constitutional violation. Jeffers, 267 F.3d at 915.

The court finds that the allegations in plaintiff's second amended complaint do not cure the deficiencies identified in the court's order dismissing plaintiff's first amended complaint. Compare ECF No. 8 at 8-9 with ECF No. 34 at 6-7. As defendants correctly point out, plaintiff again failed to allege their personal involvement in his constitutional violation. ECF No. 26 at 4-5. "He does not allege, for example, that either Barnes or Cate was personally aware of the loss of plaintiff's first medical request form or the delay in treatment of plaintiff's broken finger. Furthermore, there is nothing in the [second amended complaint] that connects plaintiff's general

6

claim that defendants Barnes and Cate oversee poor medical care in California's overcrowded prisons with his specific claim that his Eighth Amendment rights were violated because he received a delay in treatment." Id. at 5.  During the hearing on defendants' motion to dismiss, plaintiff's counsel made it clear that he wanted to challenge the provision of medical services to all inmates, referencing the recent Ninth Circuit opinion in Pride v. Correa in support of his argument.  See Pride v. Correa, No. 10-56036, 2013 WL 3742531, at *5 (9th Cir. July 16, 2013) ("Individual claims for injunctive relief related to medical treatment are discrete from the claims for systemic reform addressed in Plata.").  However, plaintiff's counsel failed to identify any connection between defendants and the individual medical care plaintiff received, despite being given an opportunity to do so both in his opposition and during the hearing.[5]  See, e.g., Pride v. Correa, No. 10-56036, 2013 WL 3648587, at *2 (9th Cir. July 16, 2013) (concurrent memorandum disposition finding summary judgment in favor of defendant warden proper because defendant "was neither personally involved with the alleged constitutional violation nor was his policy sufficiently causally connected to the violation") (citing Redman v. County of San Diego, 942 F.2d 1435, 1454-55 (9th Cir. 1991)).

With regard to personal involvement, as noted above, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement.  Wesley, 333 F.Supp.2d at 892.  Here, plaintiff alleges that defendant Cate knew prisons were overcrowded and providing inadequate medical care, and "did nothing to fix the system."  ECF No. 34 at 6.  These allegations fail to go beyond defendant Cate's general

---

[5] In his second amended complaint and during the hearing on defendants' motion to dismiss, plaintiff attempted to point to an October 2009 audit of California Correctional Center's medical care system in an effort to demonstrate defendants knew of "deficiencies in how the facility handled inmate medical requests."  ECF No. 34 at 6.  However, this report was not attached to the second amended complaint, nor to plaintiff's opposition to defendants' motion to dismiss.  Nevertheless, plaintiff has not asserted that the report identifies, for example, a policy that medical forms were filled out incorrectly or lost which would indicate a causal connection between defendants' actions or inactions and plaintiff's injury.  See, e.g., Starr v. Baca, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (finding plaintiff sufficiently alleged a claim of deliberate indifference because, in addition to alleging defendant was given notice of "several reports[] of systematic problems in the county jails under his supervision," plaintiff specifically alleged "numerous incidents in which inmates in Los Angeles County jails have been killed or injured because of the culpable actions of the subordinates of" defendant, and that defendant "was given notice of all of these incidents").

responsibility for supervising the CDCR and specify how he was directly involved in plaintiff's alleged untimely medical treatment. Plaintiff alleges defendant Barnes "failed to provide a facility that could provide adequate medical care . . . [which] set into motion a series of acts" that led to a deprivation of plaintiff's Eight Amendment rights. However, plaintiff does not allege defendant Barnes knew of a violation of plaintiff's Eighth Amendment rights and failed to act to prevent them, or that he personally reviewed any of plaintiff's medical request forms, or that he was aware of the condition of plaintiff's finger. Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012) (holding that a prison warden and associate warden could be held liable for deliberate indifference to a prisoner's medical needs, "[b]ecause they were aware [the prisoner] needed surgery and failed to act to prevent further harm"). Thus, plaintiff failed to establish defendants' personal involvement in the alleged constitutional violation.

With regard to a sufficient causal connection, "[t]he requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson, 588 F.2d at 743-44. "A supervisor may be liable if the supervisor knew of the violations and failed to act to prevent them." Snow, 681 F.3d at 989 (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). Here, the allegations that defendant Cate knew prisons were overcrowded, and failed to "fix the system" are too general to establish that he knew or reasonably should have known this would cause others to inflict the constitutional injury plaintiff allegedly suffered. Johnson, 588 F.2d at 743-44. In other words, the fact that defendant Cate knew that California prisons, in general, were overcrowded does not establish a sufficient causal connection to plaintiff's alleged constitutional violation due to improper medical treatment while housed in CCC-Susanville.

Plaintiff's allegations regarding defendant Barnes' are also insufficient. Plaintiff alleges defendant Barnes "failed to provide a facility that could provide adequate medical care to its inmates and set into motion a series of actions that he knew or reasonably should have known would result in the deprivation of Plaintiff's Eighth Amendment rights." Id. at 7. However, these allegations fail to specify the "series of acts" defendant Barnes "set into motion" that, for example, led to a policy of improperly processing medical request forms. The allegations merely

amount to defendant Barnes' general responsibility of supervising the operations of CCC-Susanville. Thus, plaintiff's allegations fail to establish a sufficient causal connection between defendants' conduct and the alleged violation of his constitutional rights.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants Barnes and Cate's motion to dismiss (ECF No. 37) be granted;

2. Defendants Barnes and Cate be dismissed from this action with prejudice; and

3. Defendants Does 1-25 be dismissed from this action without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 31, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

fern1125.mtd