UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON ALEXANDER FERNANDEZ,<br><br>          Plaintiff,<br><br>     v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTION & REHABILITATION, et al.,<br><br>          Defendants. | No. 2:11-cv-01125 MCE KJN P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding with counsel with a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds against defendant Pomazal on claims raised in plaintiff's second amended complaint, filed April 17, 2013.[1] ECF No. 34. Presently before the court is nonparty California Department of Corrections and Rehabilitation's ("CDCR") December 9, 2013 motion to quash two subpoenas. Mot. to Quash, ECF No. 52. On January 28, 2014, plaintiff opposed the motion (ECF No. 56), and on February 4, 2014, CDCR filed a reply thereto (ECF

---

[1] On April 27, 2011, plaintiff initiated this action. ECF No. 1. Although the California Department of Corrections and Rehabilitation was initially named by plaintiff as a defendant, upon initial screening, the court did not authorize service of the complaint on CDCR. See 28 U.S.C. § 1915A (requiring the court to review a complaint in a civil action in which a prisoner seeks redress from a governmental entity, officer, or employee). Following the court's screening of plaintiff's original complaint, plaintiff filed an amended complaint on July 13, 2011, that did not include CDCR as a defendant. ECF No. 8. On September 3, 2013, plaintiff's claims against defendants Cate and Barnes were dismissed for failure to state a claim upon which relief could be granted. ECF Nos. 45, 48.



No. 57). Upon consideration of the parties' arguments as set forth in the briefing submitted and for the reasons set forth below CDCR's motion to quash will be granted.[2]

I.     BACKGROUND

Plaintiff is proceeding on his second amended complaint against defendant Pomazal. Therein, plaintiff alleges as follows. On June 7, 2009, plaintiff was playing basketball and injured his left ring finger. Second Amended Complaint, ECF No. 34, ¶ 10. Plaintiff was not medically examined until approximately one month after he suffered the injury, despite repeated requests for an examination. Id. ¶ 17. An x-ray was taken of plaintiff's finger which revealed his finger had broken and begun healing incorrectly because of the delay in treatment. Id. ¶ 18. Surgery was not recommended because of the potential damage to plaintiff's finger. Id. ¶ 22.

With regard to defendant Pomazal, the sole remaining defendant in this action, plaintiff claims that he violated plaintiff's rights under the Eighth Amendment by not allowing him to see a physician until more than one month after he suffered an injury to his finger, "despite having filed three separate 7362 Requests for consultation shortly after he suffered the injury." Id. ¶ 25. Plaintiff also claims that, "[u]nder the program implemented by Defendant Barnes for medical treatment scheduling, Defendant Pomazal had the authority to approve or deny requests for medical consultation" and as a result of plaintiff being made to wait for defendant Pomazal's approval, his initial request for medical treatment was lost which caused a delay in his treatment. Id. ¶¶ 36-37.

On or about October 23, 2013, counsel for plaintiff in this action served a subpoena on CDCR seeking production of the following documents maintained at the California Correctional Center in Susanville ("CCC-Susanville"):

> 1) All staffing logs, work logs, or other like documents that indicate who was working at the Lassen Yard medical window at any time during the period May 15, 2009 through June 15, 2009;
>
> 2) All CDCR-602 inmate appeals (a/k/a grievance) forms submitted by inmates from the time period of January 1, 2005 to December 31, 2009 that relate to the processing of a 7362 medical form including, but not limited to, complaints that 7362 forms were

---

[2] Because oral argument was not of material assistance, the court ordered this matter submitted on the briefing. See Local Rule 230(g).

>   improperly filled out and that 7362 forms were lost;
>
> 3) For all forms produced in part 2, provide all responses to the 602 appeals forms that demonstrate the disposition of the 602 appeal at any and all stages including, but not limited to, rejections of the 602 complaint, results of the informal review, results of the first formal review, results of the second formal review, and results of the third formal review;
>
> 4) Log books for the Lassen Yard medical window for the dates of June 1, 2009 to June 7, 2009 or other like document which would record the events at the window during that time period.

Mot. to Quash at Ex. A ("Operations Subpoena"). Also on or about October 23, 2013, plaintiff's counsel sought the production of documents produced by CCC-Susanville to the Office of the Inspector General in response to questions presented during its October 2009 inspection of CCC-Susanville; and documents that refer to corrective action plans undertook as referenced in a December 2009 letter. Id. at Ex. B ("OIG Subpoena").

Following unsuccessful attempts at resolving discovery disputes, CDCR filed the instant action seeking to quash the two subpoenas.

II.  LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Under Rule 45 of the Federal Rules of Civil Procedure, a court must quash or modify a subpoena that requires the disclosure of privileged or other protected matter, or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998).

"Quashing subpoenas goes against courts general preference for a broad scope of discovery, [but] limiting discovery is appropriate when the burden of providing the documents outweighs the need for it." Call of the Wild Movie, LLC v. Does 1-1, 062, 770 F.Supp.2d 332,

1  354-355 (D.D.C. 2011) (quoting North Carolina Right to Life, Inc. v. Leake, 231 F.R.D. 49, 51

2  (D.D.C. 2005)) (internal quotations omitted).  "When evaluating whether the burden of subpoena

3  compliance is undue, the court balances the burden imposed on the party subject to the subpoena

4  by the discovery request, the relevance of the information sought to the claims or defenses at

5  issue, the breadth of the discovery request, and the litigant's need for the information." Id.

6  (internal quotations omitted); see also Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal.

7  2005) ("Although irrelevance is not among the litany of enumerated reasons for quashing a

8  subpoena found in Rule 45, courts have incorporated relevance as a factor when determining

9  motions to quash."); Fed. R. Evid. 401 (Evidence is relevant if "it has any tendency to make a fact

10  more or less probable than it would be without the evidence.").  "Whether a burdensome

11  subpoena is reasonable must be determined according to the facts of the case, such as the party's

12  need for the documents and the nature and importance of the litigation."  Linder v. Dep't of Def.,

13  133 F.3d 17, 24 (D.C. Cir. 1998) (internal citations and quotations omitted).  The court must limit

14  discovery when the "burden or expense of the proposed discovery outweighs its likely benefit,

15  considering the needs of the case, the amount in controversy, the parties' resources, the

16  importance of the issues at stake in the action, and the importance of the discovery in resolving

17  the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

18      In this civil rights action brought pursuant to 42 U.S.C. § 1983, it is federal privilege law

19  that governs.  United States v. Zolin, 491 U.S. 554, 562 (1989) (("Questions of privilege that arise

20  in the course of the adjudication of federal rights are 'governed by the principles of the common

21  law as they may be interpreted by the courts of the United States in the light of reason and

22  experience.'") (quoting Fed. R. Evid. 501)); Agster v. Maricopa Cnty., 422 F.3d 836, 839 (9th

23  Cir. 2005); Kerr v. U.S. Dist. Court for N. Dist. of California, 511 F.2d 192, 197 (9th Cir. 1975).

24  III.    ANALYSIS

25      A.    Operations Subpoena Request No. 1

26      Request No. 1 of the Operations Subpoena seeks the production of documents that

27  identify prison staff members who were working at the Lassen Yard medical window between

28  May 15, 2009, and June 15, 2009.  Mot. to Quash at Ex. A.  CDCR avers that it does not have

documents responsive to this request because staff logs are only kept for two years before they are destroyed. Mot. to Quash at H. Plaintiff's opposition does not address this request and the court assumes plaintiff concedes CDCR's inability to comply. See Opposition, ECF No. 56, at 3 (noting that "CDCR indicated that responding to request 1 would be impossible as it destroys employment logs every two years"). Accordingly, on the basis of CDCR's claim that it does not have possession of existing documents responsive to this request, and to the extent CDCR seeks to quash this portion of the subpoena, the motion to quash will be granted as to Request No. 1 of the Operations Subpoena.

    B.  Operations Subpoena Request Nos. 2 and 3

Request Nos. 2 and 3 of the Operations Subpoena seek the production of all inmate grievances and responses thereto "from the time period of January 1, 2005 to December 31, 2009 that relate to the processing of a 7362 medical form." Mot. to Quash at Ex. A.

In its motion to quash, CDCR argues that Request Nos. 2 and 3 pose an undue burden in that they are overbroad as to time and the costs and resources involved in locating the documents are significant. Mot. to Quash at 5-7. With regard to the cost of producing grievance forms and responses thereto, CDCR avers that because of the manner in which administrative grievances are maintained, locating grievances that are responsive to plaintiff's subpoena would entail reviewing the Central Files of the nearly 6,000 inmates housed at CCC-Susanville. Mot. to Quash at 6; see also K. Ciudad-Real Decl., Mot. to Quash at Ex. F, ¶ 5 (explaining that 602 grievances are not indexed by the nature of the complaint (i.e. lost medical request form)). CDCR argues that "a total of at least six thousand 602-HC forms kept in inmates' Central Files would have to be reviewed" in order to determine whether they meet the criteria in plaintiff's subpoena. Mot. to Quash at 6. CDCR estimates that the cost of reviewing grievances for the five year time period would be approximately $24,000, and necessitate the hiring of additional employees. Id. at 7; K. Ciudad-Real Decl. ¶ 7.

Plaintiff counters that locating the grievances does not pose an undue burden because they are "highly relevant" to plaintiff's action. Opposition at 4-7. In that regard, plaintiff argues that his "legal theory rests on establishing that the procedures instigated to process 7362 forms were

5

1  so flawed that it created a significant delay in his receiving medical care." Id. at 4 (citing Brown
2  v. Plata, 131 S. Ct. 1910, 1925 n.3 (2011); and Todaro v. Ward, 565 F.2d 48, 52 (2d. Cir. 1977)).
3        Notwithstanding CDCR's reasonable argument regarding the undue burden of locating
4  and producing grievances responsive to plaintiff's subpoena, the court finds that the documents
5  are also not relevant to the subject matter of this action. Contrary to plaintiff's position, the court
6  finds that the second amended complaint does not allege that defendant Pomazal "failed to
7  administer an efficient medical system" or established "procedures instigated to process 7362
8  forms." Opposition at 3, 4. The second amended complaint alleges that defendant Barnes, "by
9  not overseeing a competent medical staff or implementing a medical scheduling system that
10 guaranteed inmates receive medical care in a timely manner, failed to provide a facility that could
11 provide adequate medical care to its inmates." Second Amended Complaint ¶ 35. However, the
12 claims against defendant Barnes were dismissed by the court. ECF Nos. 45, 48. With regard to
13 defendant Pomazal, plaintiff merely claims that he is responsible for the authorization and
14 scheduling of inmate heath care request forms "[u]nder the program implemented by Defendant
15 Barnes." Id. at ¶¶ 36-37. Here, plaintiff's claims against defendant Pomazal rest on whether
16 defendant Pomazal was indifferent to his serious medical needs and whether he failed to timely
17 authorize plaintiff's medical examination.
18       Considering the nature of the action, inmate grievances regarding improperly filled out or
19 lost medical request forms would not serve to establish that defendant Pomazal should be held
20 liable to plaintiff because he was indifferent to plaintiff's serious medical needs or that he failed
21 to timely authorize and schedule plaintiff's medical examination. See, e.g., Jones v. Commander,
22 Kansas Army Ammunitions Plant, Dep't. of Army, 147 F.R.D. 248, 250 (D. Kan. 1993) (("A
23 request for discovery should be considered relevant if there is any possibility that the information
24 sought may be relevant to the subject matter of this action. Discovery should ordinarily be
25 allowed under the concept of relevancy unless it is clear that the information sought can have no
26 possible bearing upon the subject matter of this action.") (citations omitted)). Thus, the court
27 finds that the documents sought by plaintiff are not relevant to the subject matter of this action.
28 ////

1    Accordingly, because the significant expense and undue burden that compliance would
2 impose on CDCR outweighs the potential relevance of the grievances to plaintiff, the motion to
3 quash will be granted as to Request Nos. 2 and 3 of the Operations Subpoena.

4    C.    Operations Subpoena Request No. 4

5    In Request No. 4 of the Operations Subpoena, plaintiff seeks log books for the Lassen
6 Yard medical window between June 1 and June 7, 2009, or other documents that recorded the
7 events at the window during that time period.  Mot. to Quash at Ex. B.  The log books contain the
8 names of inmates who sought medical treatment between the requested time period as well as a
9 description of the medical services to be provided.  Mot. to Quash at 8.

10    CDCR avers that the requested documents contain confidential information concerning
11 other inmates and are not relevant to the subject matter of this action.  Mot. to Quash at 8 (citing
12 the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d-6; and 45
13 C.F.R. §§ 160.102, 160.103).  In that regard, CDCR argues that "the evidentiary benefit of this
14 information does not outweigh the privacy concerns of the third party inmates."  Id.  Plaintiff
15 counters that the information sought is relevant and therefore outweighs the inmates' privacy
16 interests.  Opposition at 7-10.  Therein, plaintiff asserts as follows:

> Plaintiff is in possession of evidence that demonstrates need for the disclosure of the information.  Plaintiff obtained documents from the Office of the Inspector General which demonstrate the problems at CCC during the relevant time period of the Operation Subpoena. these documents include four documents demonstrating the delays in medical care at CCC and seven documents where the area to note whether care for an injury is routine or urgent has been crossed out, titled Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2.

22 Opposition at 9.  Attached to his opposition, plaintiff includes 7362 forms and physician request
23 for services forms filled out by inmate patients which he contends support his argument that the
24 log books are relevant to his claim.  See id., Exs. 1-2.  The four 7362 forms plaintiff offers as
25 "demonstrating the delays in medical care at CCC" range in date between August 7 and
26 September 24, 2009, after plaintiff's alleged injury and medical treatment took place.  The seven
27 documents offered by plaintiff that purportedly have the routine or urgent section crossed out
28 range in date from February 11 to July 1, 2009.  None of the forms contain information related

7

directly to defendant Pomazal's treatment of inmates, or his response to an inmate's request for medical services.

With regard to CDCR's assertion of a privacy right pursuant to HIPAA, there exists a privacy right in one's confidential medical records and certain other records. However, the privacy right is not absolute and discovery may be allowed if a balancing of the privacy right against the need for the information weighs in favor of disclosure. See, e.g., Allen v. Woodford, No. CV-F-05-1104 OWW LJO, 2007 WL 309485, at *6 (E.D. Cal. Jan. 30, 2007); Sedaghatpour v. State of California, No. C 07-1802 WHA (MEJ), 2007 WL 4259214, at *1 (N.D. Cal. Dec. 3, 2007); Holestine v. Terhune, No. C 99-5200 PJH (JL), 2003 WL 23281594, at *10 (N.D. Cal. Nov. 21, 2003).

Here, balancing plaintiff's need for the information he seeks against the privacy rights asserted by CDCR tips in favor of CDCR. Notwithstanding CDCR's assertions of privacy rights under HIPAA, the forms offered by plaintiff fail to establish that the medical log books are relevant to his claims against defendant Pomazal, or that they are likely to lead to the discovery of admissible evidence. Delaney v. Tilton, No. 1:07-cv-1219 LJO DLB PC, 2008 WL 4298179, at *3 (E.D. Cal. Sept. 18, 2008) (("Of course, the Court's examination of CDCR's assertions of privilege [and right of privacy] would be meaningless if it turned out that the documents sought are not relevant to a party's claim or defense, or are not reasonably calculated to lead to the discovery of admissible evidence.") (citing Fed. R. Civ. P. 26(b)(1))). As discussed above, this action is proceeding on plaintiff's claims against defendant Pomazal. The issues raised therein are solely related to defendant Pomazal's treatment and/or actions taken towards plaintiff. Plaintiff has made no showing that the identity of third party inmates and a description of the medical services they were to receive are relevant to his claims against defendant Pomazal in this action.

Accordingly, because the information sought by plaintiff does not outweigh the privacy rights of the inmates asserted by CDCR, the motion to quash will be granted as to Request No. 4 of the Operations Subpoena. See Allen, 2007 WL 309485, at *6 (privacy involves a balancing of interests under federal law).

    D.    OIG Subpoena

The OIG Subpoena seeks the production of documents produced by CCC-Susanville in response to a series of questions presented by the Office of the Inspector General during its October 2009 inspection of the prison; and materials related to a corrective action plan based on a December 2009 letter written by a Ms. Epperly-Ellis.  Mot. to Quash at Ex. B.

CDCR contends that locating the responsive documents poses an undue burden, and they are irrelevant to the subject matter of the action because "[a]ny findings of this audit necessarily reflects conditions at CCC[-Susanville] in October 2009, not June 2009."  Mot. to Quash at 9 (citing Fed. R. Evid. 407).  Plaintiff's opposition fails to address this request.

Notwithstanding plaintiff's failure to address CDCR's argument, the court finds that the documents sought in the OIG Subpoena are not relevant to the subject matter of this action for the same reasons discussed above regarding Request Nos. 2-4 of the Operations Subpoena.  Accordingly, the motion to quash will be granted as to the OIG Subpoena.

IV.    CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that nonparty CDCR's December 9, 2013 motion to quash (ECF No. 52) is granted.

Dated:  February 27, 2014

fern1125.mtq

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE